**UNITED STATES DISTRICT COURT**
EVERETT McKINLEY DIRKSEN BUILDING
UNITED STATES COURT HOUSE
CHICAGO, IL 60604

MICHAEL W. DOBBINS
CLERK

OFFICE OF THE CLERK

Coral Bay, Inc.,

v.

Zakaspace Corporation,

Case No.: 96 C 3884

00-6083
CIV-LENARD
MAGISTRATE
TURNOFF

### CERTIFICATION OF JUDGMENT
### FOR REGISTRATION IN
### ANOTHER DISTRICT

I, Michael W. Dobbins, Clerk of this United States District Court certify that the attached judgment is a true and correct copy of the original judgment entered in this action on 6/23/99, as it appears in the records of this court, and that, an appeal was taken from this judgment and the appeal was dismissed by order entered on 11/9/99.

IN TESTIMONY WHEREOF, I sign my name and affix the seal of this Court on December 21, 1999.

Michael W. Dobbins
Court Administrator

By: Daphne Collins
Deputy Clerk

The motions listed in Rule 4(a) of the Federal Rules of Appellate Procedure are motions: for judgment notwithstanding the verdict; to amend or make additional findings of fact; to alter or amend the judgment; for a new trial; and for an extension of time for filing a notice of appeal.

CERTIFIED COPY   (Rev 7/98)

# United States District Court
## Northern District of Illinois
### Eastern Division

I, Michael W. Dobbins, Clerk of the United States District Court for the Northern District of Illinois, do hereby attest and certify that the annexed document(s) is(are) a full, true, and correct copy of the original(s) on file in my office and in my legal custody.

IN TESTIMONY WHEREOF: I have hereunto subscribed my name and affixed the seal of the foresaid court at Chicago, Illinois, on

MICHAEL W. DOBBINS, CLERK

By: *[signature]*

Deputy Clerk

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| Coral Bay, Inc | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 96 C 3884 |
| Zakaspace Corporation | |

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to trial before the Court. The issues have been tried and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Court finds for the plaintiff Coral Bay, Inc., d/b/a Skyline Designs. Defendant Zakaspace Corporation is found liable for $179,488.45 for breach of contract with plaintiff Coral Bay, Inc. d/b/a Skyline Designs. Defendant Zakaspace Corporation is also liable to plaintiff Skyline for pre-judgment interest on all balances due at five percent per annum from the date of the invoices at issue to the date of this judgment, pursuant to 815 ILCS 205/2.

Judgment is hereby entered in favor of the plaintiff Coral Bay, Inc, d/b/a Skyline Designs and against the defendant Zakaspace Corporation. This action is closed.

**DOCKETED**

JUN 24 1999

Michael W. Dobbins, Clerk of Court

Date: 6/23/1999

Patricia McQurter-Figgs, Deputy Clerk

Minute Order Form (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | DAVID H. COAR | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 96 C 3884 | Date | June 23, 1999 |
| Case Title | Coral Bay, Inc. v. Zakaspace Corporation | | |

**MOTION:** (In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☐ Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
   ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)
(10) ☒ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, the court finds for the plaintiff Coral Bay, Inc. d/b/a Skyline Designs. Defendant Zakaspace Corporation is found liable for $179,488.45 for breach of contract with plaintiff Coral Bay, Inc. d/b/a Skyline Designs. Defendant Zakaspace Corporation is also liable to plaintiff Skyline for pre-judgment interest on all balances due at five percent per annum from the date of the invoices at issue to the date of this judgment, pursuant to 815 ILCS 205/2.

(11) ☒ [For further detail see ☐ order on the reverse of ☒ order attached to the original minute order form.]

| X | No notices required, advised in open court. | | number of notices | |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | JUN 24 1999 | date docketed | Document |
| | Notified counsel by telephone. | | | 5A |
| | Docketing to mail notices. | | docketing dpty. initials | |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate Judge. | | date mailed notice | |
| mkw | courtroom deputy's Initials | Date/time received in central Clerk's Office | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 24 1999

| | |
|---|---|
| CORAL BAY, INC., d/b/a SKYLINE DESIGN, | |
| Plaintiff, | |
| v. | No. 96 C 3884 |
| | HONORABLE DAVID H. COAR |
| ZAKASPACE CORPORATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before this court is plaintiff Coral Bay, Inc. d/b/a Skyline Design's ("plaintiff" or "Skyline") two-count complaint for breach of contract against defendant Zakaspace Corporation ("defendant" or "Zakaspace"). After conducting a bench trial on April 27, 1998 and reviewing the admitted exhibits, for the following reasons this court finds for the plaintiff.

### Statement of Facts

This action was brought by plaintiff Skyline against Zakaspace for payment on 44 unpaid invoices on the production and manufacture of numerous pieces of custom artwork for restaurants. Skyline is a decorative arts company that works with architects and designers to create paintings, sculpture and other projects. (Transcript, p.6). Zakaspace is a middleman business that works with clients in the hospitality industry to design restaurants and other similar projects. Zakaspace designs and takes the orders for custom-designed goods from their clients and places those orders for manufacture with suppliers and vendors such as Skyline. (Transcript, p.161-62).

Skyline and Zakaspace have conducted business with each other for over 10 years, generating

1

53

millions of dollars in business for the two companies. (Transcript, pp. 7, 162, 189). The general procedure to place and fill orders between Skyline and Zakaspace has been basically the same throughout the years. Zakaspace would contact Skyline to describe a project they would have in mind for a client. They would fax or send Skyline some basic drawings of the pieces needed. Skyline would respond with designs of the requested pieces and a formal cost estimate. If Zakaspace was satisfied with the design and cost, they would send Skyline a purchase order and Skyline would begin production. Once production was complete, Skyline would send the pieces to either Zakaspace or Zakaspace's client, at Zakaspace's direction, and then send the invoice to Zakaspace. (Transcript, pp.8-9; Statement of Uncontested Facts, p. 4). These invoices required 50 percent down as deposit, and then the balance due "net 30," i.e. 30 days after delivery of the ordered pieces. (Transcript, p.9).

The 44 orders at issue in this case occurred between 1994 and 1996. (Pl.'s Ex. 1-42). Of those 44 orders, 30 involved work done for Piccadilly Cafeterias, a customer of Zakaspace (the "Piccadilly Invoices"). Some of the merchandise manufactured in response to the Piccadilly Invoices was sent directly to Piccadilly Cafeterias, as per Zakaspace's instructions in the purchase orders, while some was kept with Skyline. Skyline contends that $176,488.45 is due on these 44 invoices.[1] Zakaspace contends that Skyline failed to fully perform on these purchase orders, for

---

[1] Originally, Skyline alleged that Zakaspace owed $182,702.45. However, Debra Tremblay-Toth, the business manager for Skyline, testified that after comparing Zakaspace's records to Skyline's, Skyline agreed with Zakaspace that seven of the invoices had been paid for a total of $13,614.00, thus reducing the amount alleged to 169, 088.45. (Transcript, p. ___). Then Skyline amended its complaint to add the balance outstanding on two more purchase orders, numbers 1709 and 1710, for $7,400.00, bringing the amount alleged to $176,488.45. (Pl.'s Ex. 43, 44).

2

Skyline did not deliver $59,895.00 of merchandise on the Piccadilly Invoices, and thus Skyline is barred from recovery. (Dft.'s Post-Trial Brief, pp.6-7). Also, Zakaspace contends that Skyline improperly billed Zakaspace for crating and freight on the orders. (Dft.'s Post-Trial Brief, p. 10).

Prior to trial, Skyline filed for partial summary judgment on several items that Zakaspace did not dispute. This court granted the motion and found that the minimum amount due from Zakaspace to Skyline was $43,604.83. (Minute Order, March 30, 1998). In the Supplemental Pre-Trial Order, the parties stipulated to the procedure used for orders between Zakaspace and Skyline, and included the invoices and purchase orders in question as the exhibits. (Supp. Final Pre-Trial Order, pp.4-6, 12-15, 24-27). At trial, Skyline offered the testimony of Charles Rizzo ("Rizzo"), the President of Skyline, and Debra Tremblay-Toth ("Toth"), the Business Administration Manager of Skyline. Zakaspace offered the testimony of the two partners of Zakaspace, Spiros Zakas ("Spiros"), the Head Designer, and Peter Zakas ("Peter"), the Sales and Marketing Director.

Rizzo testified to the ordering process, production procedure, and the crating and shipping steps in the orders from Zakaspace. In particular, Rizzo testified that Skyline and Zakaspace had an understanding over many years on how items should be shipped and that Zakaspace always paid for the shipping of pieces ordered from Skyline. (Transcript, pp.63-64). Rizzo also testified that he had several conversations with Pat Ireland ("Ireland"), the Controller of Zakaspace, who informed Rizzo to not deliver several of the pieces produced for Piccadilly Cafeterias because they were going through remodeling. (Transcript, pp.11-12, 195-96, 199-201). In those same conversations, Rizzo inquired to Ireland when Skyline was going to be paid by Zakaspace on these invoices and Ireland asked Rizzo to be patient. (Transcript, p. 16). Ireland was replaced by Cecilia Carstens ("Carstens") as the Controller for Zakaspace and she gave the same answer to Rizzo when he asked about the

3

unpaid invoices. (Transcript, p. 17). Finally, Rizzo moved up the ladder to Spiros and Peter Zakas to inquire about payment on the Piccadilly Invoices and he received the same answer from them as well–just be patient and you will be paid. (Transcript, p. 18). Never during any of these conversations did someone from Zakaspace question Skyline's performance under the invoices. (Transcript, p.22).

Toth, as the Business Administration Manager of Skyline, testified in more detail about ordering procedures and invoicing. In particular, Toth testified that she placed the freight charges on the invoices for every invoice in question. (Transcript, pp.112-114). Each freight charge on each individual invoice came directly from the freight company invoice with a ten percent administrative fee. (Transcript, p.113). During the period of time in question, Zakaspace never complained about the cost of crating an item or freight charges. (Transcript, p. 151).

In contrast to the detailed testimony given by plaintiff's witnesses Rizzo and Toth, defendant's witnesses Spiros and Peter Zakas gave very general testimony. Both Spiros and Peter Zakas testified that they thought that Zakaspace did not owe Skyline on the outlying balance on these invoices, but both also admitted in their testimony that they did not have knowledge about the day-to-day operations and ordering procedures of Zakaspace. Spiros Zakas admitted that he knew nothing about the invoices and did not really understand them. (Transcript, p. 183). Peter Zakas testified that he does not get involved with payments, orders, deliveries and invoicing and that the Controller has authority to make those decisions. (Transcript, pp. 191-92, 194).

Once the trial ended, both parties submitted post-trial briefs.

4

## Analysis

Skyline argues that Zakaspace ordered specific services and products and thus is now obligated to the balance due on those orders since Skyline has fully performed. (Pl.'s Post-Trial Brief, p.3). Skyline sent invoices to Zakaspace representing the charges for the services and products, including crating and freight costs. Zakaspace received these invoices, never objected, and answered these invoices with purchase orders. (Pl.'s Post-Trial Brief, pp. 4-5). Zakaspace also has not proved that it is entitled to any credit or deduction from the amount due on the invoices. (Pl.'s Post-Trial Brief, pp.8-9). Finally, since Zakaspace has withheld payment for over two years, that is considered unreasonable and vexatious behavior under 815 ILCS 205/2, and therefore Skyline should receive pre-judgment interest on all balances due at five percent annum from the date of the Piccadilly invoices to the date of judgment. (Pl.'s Post-Trial Brief, p.14).

Zakaspace has three main arguments.[2] First, Skyline failed to introduce into evidence the purchase orders and thus there is no evidence of a contract between Skyline and Zakaspace. (Dft.'s Post-Trial Brief, p.4). Second, Skyline failed to deliver over $59,000 worth or merchandise and thus did not fully perform on the contract. (Dft.'s Post-Trial Brief, pp.6-7). Finally, Skyline has not demonstrated that the crating and freight charges were proper and thus Zakaspace should be credited

---

[2] Zakaspace had two other arguments. First, Skyline should have allocated money paid to invoices at issue here unless Skyline can demonstrate that such payments should have been allocated elsewhere. (Dft.'s Post-Trial Brief, pp.8-9). However, this court has already found that a creditor can apply payments due to the account he or she sees fit, unless the debtor indicates which account to apply the payment. (Transcript, p. 146). The second argument is that Skyline designed and manufactured some of the merchandise defectively. (Dft.'s Post-Trial Brief, p.12). Zakaspace has not presented any credible evidence on this point. Rizzo did testify that there was problems with one fountain manufactured for Piccadilly. (Transcript, p.50). However, that issue was resolved with Piccadilly when the malfunction was found to be damaged caused by construction crews and not by the manufacture of the fountain. (Transcript, pp.50-51).

5

for those costs. (Dft.'s Post-Trial Brief, p.10).

**Evidence of Contracts**

Zakaspace argues that Skyline never introduced evidence of a contract between Skyline and Zakaspace. However, in the Supplemental Final Pre-Trial Order, both sides admitted the invoices and the purchase orders in question into evidence. (Supp. Final Pre-Trial Order, pp. 12-14, 24-28). At trial, all four witnesses testified and referred to both the invoices and the purchase orders.

The exchange of forms between merchants creates a contract. Sethness-Greenleaf, Inc. v. Green River Corporation, 65 F.3d 64, 66 (7th Cir. 1995). In Sethness-Greenleaf, the Seventh Circuit found that after a seller sends a buyer an invoice, a written confirmation of the invoice is considered an acceptance, even though it may contain terms not in the invoice. Id. at 66. See also, Union Carbide Corp. v. Oscar Mayer Foods Corp., 947 F.2d 1333, 1337 (7th Cir. 1991). In the present case, all four witnesses testified to the exchange of invoices and purchase orders on these transactions, and the parties stipulated to the procedure for orders in the Supplemental Final Pre-Trial Order. Therefore, there is evidence of an offer and an acceptance on each of these 44 transactions.

**Full Performance by Skyline**

Zakaspace's second argument is that even if there are contracts for each of these transactions, Skyline did not fully perform on the contracts and is thus barred form recovery.

Under Illinois State law, "[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract." 810 ILCS 5/2-301. However, when one party fails to perform, the other party has grounds for non-performance:

> "A contract for sale imposes the obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand

6

adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." 810 ILCS 5/2-609(1).

The Illinois courts have found that a buyer's falling behind in his or her payment to the seller on another contract is grounds for reasonable insecurity. Toppert v. Bunge Corp., 60 Ill.App.3d 607, 612, 377 N.E.2d 324, 328 (1978). Even though 2-609(1) states that the seller should make a written demand for assurance of payment, both the Illinois courts and the Seventh Circuit have found that oral demand is enough for reasonable insecurity. Chronister Oil Company, 34 F.3d 462, 464-65 (7th Cir. 1994); Toppert, 60 Ill.App.3d at 612, 377 N.E.2d at 328.

In the present case, there is credible evidence that Skyline repeatedly requested payment on the invoices in question from both the Controllers of Zakaspace and the two partners of Zakaspace. Zakaspace never gave Skyline assurance of payment, only continuous requests for Skyline to "be patient." Since Skyline had already been told by Zakaspace to hold delivery on several Piccadilly invoices, and then Zakaspace fell behind in its payments, Skyline had reasonable grounds for insecurity and thus withholding performance.

**Crate and Freight Charges**

Zakaspace argues that the damages awarded to Skyline should be reduced based upon overcharges on crating and freight charges. However, Toth presented credible testimony that Skyline regularly charged Zakaspace for crating and freight and that these costs were listed on the invoices as quotes form the freight company itself. Neither of Zakaspace's witnesses had no direct knowledge of how Zakaspace is billed for freight charges. (Transcript, pp. 176, 191, 194). However, the credible testimony of Rizzo and Toth shows that Zakaspace did not state at any time that they had a problem with the crate and freight charges until the commencement of this suit.

## Conclusion

For the foregoing reasons, defendant Zakaspace Corporation is found liable for $179,488.45 for breach of contract with plaintiff Coral Bay, Inc. d/b/a Skyline Designs. Defendant Zakaspace Corporation is also liable to plaintiff Skyline for pre-judgment interest on all balances due at five percent annum from the date of the invoices at issue to the date of this judgment, pursuant 815 ILCS 205/2.

Enter:

_____
David H. Coar
United States District Judge

Dated: June 23, 1999

8

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CORAL BAY, INC. D/B/A SKYLINE DESIGN

## DEFENDANTS
ZAKASPACE CORPORATION

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Cook Cty, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: ___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

CV B FtL

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
MARC D. SHERMAN, P.C., 7337 N. Lincoln Ave. #283
Lincolnwood, IL 60712; 847-674-8756

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, (BROWARD), PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | **PERSONAL PROPERTY** | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | B☐ 690 Other | **A LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☒ 890 Other Statutory Actions A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

REGISTRATION OF FOREIGN JUDGMENT

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ ___
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE ___  DOCKET NUMBER ___

DATE: 1/11/00
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY
RECEIPT # 518333  AMOUNT $20.00  01-18-00
APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___